```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------

PHOENIX BULK CARRIERS (BVI) LTD.,
                                            20-cv-936 (JGK)
                    Petitioner,
                                            MEMORANDUM OPINION
        - against -                         AND ORDER

TRIORIENT LLC,

                    Respondent.
------------------------------------
```

JOHN G. KOELTL, District Judge:

The petitioner, Phoenix Bulk Carriers (BVI) Ltd., brings this action to confirm an arbitration award issued against the respondent, Triorient, LLC, pursuant to the Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "Convention"), 9 U.S.C. §§ 201-208, and the Federal Arbitration Act (the "FAA"), 9 U.S.C. §§ 1-16. The petitioner's petition is **granted**.

**I.**

The petitioner, Phoenix Bulk Carriers, is a foreign business with its principal place of business in the British Virgin Island and the owner of the ocean vessel M/V PRETTY LADY. Pet. ¶ 2. The respondent, Triorient, is a foreign business entity with its principal place of business in Connecticut and the charterer of the M/V PRETTY LADY. Id. at ¶ 3.

On November 10, 2016, the respondent was awarded a tender to purchase direct reduced iron, hot molded briquettes, type A

1

("DRI A") from Complejo Siderurgico de Guayana, C.A. (Comsigua), a Venezuelan state-owned producer of raw materials. Pet., Ex. 2 ("Final Award") at 5. The respondent subsequently sold the DRI A to a buyer in Turkey and entered into a charter party with the petitioner on November 11, 2016 to transport the cargo of DRI A from Venezuela to Turkey. Id. On November 26, 2016, the petitioner delivered the vessel M/V PRETTY LADY from West Africa to Venezuela pursuant to the charter party. Id. at 6.

After the M/V PRETTY LADY had arrived in Venezuela, the petitioner learned that Comsigua had canceled the tender with the respondent on November 13, 2016 after the respondent refused to sign the contract and unsuccessfully attempted to negotiate for a more favorable deal. Id. at 7. The respondent did not inform the petitioner of the lost cargo and allowed the petitioner to continue M/V PRETTY LADY's voyage from West Africa to Venezuela while it tried to persuade Comsigua to reconsider its cancellation. Id. at 8. When Comsigua refused to reconsider, the respondent located a substitute cargo with Iconserco, another Venezuelan entity, and successfully contracted with them on November 30, 2016 to supply the required cargo in December. Id. However, it became clear that the cargo might not be ready to load until mid-January and under the contract with Iconserco, the respondent would have been responsible for demurrage. Id.

On December 3, the respondent issued a cancellation notice to the petitioner seeking to absolve itself of all responsibilities for non-performance. Id. at 5. The petitioner proceeded to mitigate damages by substituting the vessel M/V PRETTY LADY into the performance of a charter that the petitioner had previously fixed with another business entity to carry coal from Venezuela to Brazil. Id. The petitioner then issued to the respondent a statement for detention and lost profits, which the respondent subsequently rejected. Id. at 5-6.

The petitioner initiated arbitration pursuant to the charter party's arbitration clause seeking to recover damages in detention and lost profits arising from the respondent's non-performance. The arbitration was held in New York City and the law to be applied was the general maritime law of the United States. The respondent argued that Comsigua's refusal to provide the contract after the tender award, in conjunction with Iconserco's failure to provide cargo in December, constituted a force majeure in accordance with the charter party's force majeure clause. Id. at 8-9. The force majeure clause contained in the charter party provides, in relevant part, that "[n]either the vessel, the Master, Carrier nor Charterer shall . . . be responsible for any loss or damage or delay or failure in preforming hereunder, arising or resulting from . . . delay or failure of . . . suppliers of cargo." Id. at 3.

3

On September 27, 2019, the arbitrators found that the respondent's inability to provide cargo was a result of its own strategic decisions and the fact that such strategic decisions went awry did not constitute a force majeure situation. Id. at 7-9. In particular, the respondent deliberately returned the contract to Comsigua unexecuted in order to attain more favorable amendments while knowing that Venezuelan government entities are often not willing to negotiate, id. at 7, and the respondent alone made the decision to forgo alternative cargo when the Iconserco cargo became too expensive a solution to the lost Comsigua cargo, id. at 8.

The arbitrators also found that the petitioner's mitigation fixture was not unreasonable as it was the result of weighing many options and choosing the fixture believed to be the best at the time. Id. at 11. The respondent argued that the petitioner should have considered a fixture that would have netted a profit, such as the Comsigua cargo that had been canceled with the respondent and subsequently awarded to a competitor. Id. at 10-11. However, the respondent failed to provide any evidence of the relative profitability of this hypothetical fixture; the only evidence that the respondent submitted was a witness statement from the broker of the parties' contract, which the arbitrators found had only "subjective parameters" and "tenuous projections" that made it "difficult for [the statement] to

4

outweigh the reasonableness of [the petitioner's] mitigation voyage." Id.

Lastly, the respondent raised an unseaworthiness claim, asserting that the PRETTY LADY could not carry the intended cargo of DRI A, but the arbitrators dismissed this claim for lack of merit after finding that DRI A was a permissible cargo. Id. at 9.

On September 27, 2019, the arbitrators ordered the respondent to pay $523,105.72 in detention fees, lost profits, interest, and attorney and arbitration fees. Id. at 12. The arbitrators' award also provides that in the event the award is not paid within 30 days of issuance, interest shall accrue at the prime rate from the date of issuance through the date of judgment. Id.

The petitioner filed a motion to confirm the arbitration award on May 9, 2020. Dkt. No. 8. On May 29, 2020, after the respondent's original time to oppose the motion had lapsed, the Court extended the respondent's time to respond until June 12, 2020. Dkt. No. 12. As of the date of this Opinion, the respondent has failed to respond to the petition.

## II.

The Second Circuit Court of Appeals has explained that a default judgment is generally inappropriate in a proceeding to confirm or vacate an arbitration award because "[a] motion to

5

confirm or vacate an [arbitration] award is generally accompanied by a record, such as an agreement to arbitrate and the arbitration award decision itself . . . . [T]he petition and accompanying record should [be] treated as akin to a motion for summary judgment based on the movant's submissions." D.H. Blair & Co. v. Gottdiener, 462 F.3d 95, 109 (2d Cir. 2006).

The standard for granting summary judgment is well established. "The [C]ourt shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Darnell v. Pineiro, 849 F.3d 17, 22 (2d Cir. 2017). The substantive law governing the case will identify those facts that are material and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

This action arises under the Convention because the agreement at issue is commercial and not entirely between citizens of the United States. 9 U.S.C. § 202; see also Republic of Ecuador v. Chevron Corp., 638 F.3d 384, 391 (2d Cir. 2011). Where, as here, "an arbitral award falling under the Convention is made," any party to the arbitration may apply to any court

6

with jurisdiction for an order confirming the award. 9 U.S.C. § 207.

In such case, "[t]he court shall confirm the award unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in [Article V of the] Convention." Id. Article V of the Convention generally "provides the exclusive grounds for refusing confirmation under the Convention." Yusuf Ahmed Alghanim & Sons v. Toys "R" Us, Inc., 126 F.3d 15, 20 (2d Cir. 1997) (citing Convention, art. V). Article V of the Convention provides that a court may refuse to enforce an arbitral award where:

> (a) The parties to the agreement . . . were . . . under some incapacity, or the said agreement is not valid under the law . . . ; or
> (b) The party against whom the award is invoked was not given proper notice of the appointment of the arbitrator or of the arbitration proceedings . . . ; or
> (c) The award deals with a difference not contemplated by or not falling within the terms of the submission to arbitration, or it contains decisions on matters beyond the scope of the submission to arbitration . . . ; or
> (d) The composition of the arbitral authority or the arbitral procedure was not in accordance with the agreement of the parties . . . ; or
> (e) The award has not yet become binding on the parties, or has been set aside or suspended by a competent authority of the country in which, or under the law of which, that award was made.

Id. at 19 (citation omitted). "Enforcement may also be refused if the subject matter of the difference is not capable of settlement by arbitration, or if recognition or enforcement of the award would be contrary to the public policy of the country in which enforcement or recognition is sought." Id. (internal quotation marks, alterations, and citation omitted).

Moreover, the Second Circuit Court of Appeals has held that Chapter 1 of the FAA and all of its grounds, express and implied, for modification and vacatur apply under the Convention where, as in this case, the award was rendered in the United States or pursuant to United States law. Id. at 18, 23; see also Ecopetrol S.A. v. Offshore Expl. & Prod. LLC, 46 F. Supp. 3d 327, 340 n.6 (S.D.N.Y. 2014). Under the FAA, a district court's role in reviewing an arbitration award is extremely limited. British Ins. Co. v. Water St. Ins. Co., 93 F. Supp. 2d 506, 514 (S.D.N.Y. 2000). "Arbitration awards are not reviewed for errors made in law or fact." Id. Arbitral awards may only be vacated on extremely limited grounds. See, e.g., Hall St. Assoc's, LLC v. Mattel, Inc., 552 U.S. 576, 588, 128 S. Ct. 1396, 170 L. Ed. 2d 254 (2008); Seed Holdings, Inc. v. Jiffy Int'l AS, 5 F. Supp. 3d 565, 585-86 (S.D.N.Y. 2014); see also Ecopetrol S.A., 46 F. Supp. 3d at 340.

The FAA permits a district court to vacate an arbitration award on four grounds:

> (1) where the award was procured by corruption, fraud, or undue means;
> (2) where there was evident partiality or corruption in the arbitrators, or either of them;
> (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or
> (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a); see also Jock v. Sterling Jewelers Inc., 646 F.3d 113, 121 (2d Cir. 2011); Stolt-Nielsen SA v. AnimalFeeds Int'l Corp., 548 F.3d 85, 90-91 (2d Cir. 2008), rev'd on other grounds, 559 U.S. 662 (2010); McQueen-Starling v. UnitedHealth Grp., Inc., 654 F. Supp. 2d 154, 161 (S.D.N.Y. 2009). The arbitration award may also be vacated under the FAA if it exhibited a "manifest disregard" of the law. Stolt-Nielsen, 548 F.3d at 94.

### III.

In this case, the arbitrators' award was amply justified. The arbitrators found that the evidence and testimony established that the force majeure clause did not apply to the respondent's non-performance and that the respondent is therefore responsible for the damages incurred by the petitioner, plus other costs associated with arbitration.

9

Further, there is no evidence that the charter party was invalid, the award exceeded the scope of submission to arbitration, the subject matter was not capable of settlement by arbitration, the award was contrary to public policy, or that the arbitral panel's composition was not in accordance with the terms of the charter party. The respondent was given proper notice in all instances, and there is no evidence that the arbitrators exceeded their powers or that their decision was procured by corruption, impartiality, or misconduct. Therefore, none of the seven exclusive defenses to confirmation of an arbitration award under the Convention or the four reasons to vacate an arbitration award under the FAA apply here. Moreover, there is no arguable basis for finding that the decision of the arbitrators was in "manifest disregard of the law." Accordingly, the final award is confirmed, and the petitioner is entitled to judgment confirming the arbitration award. While the final award provides that interest on the award amount shall accrue at the prime rate through the date of judgment, the petitioner has agreed to forgo additional prejudgment interest beyond June 1, 2020. Dkt. No. 11.

## CONCLUSION

The Court has considered all of the arguments raised by the parties. To the extent not specifically addressed, the arguments are either moot or without merit. For the reasons explained

above, Phoenix Bulk Carriers' petition to confirm the arbitration award and for prejudgment interest is **granted**. Phoenix Bulk Carriers is entitled to $523,105.72 plus prejudgment interest at the rate of 4.35% calculated from September 27, 2019, until June 1, 2020.

The Clerk of Court is directed to enter judgment accordingly. The Clerk is also directed to close all open motions and to close this case.

**SO ORDERED.**

**Dated:**     **New York, New York**
            **July 26, 2020**

                                        /s/ John G. Koeltl
                                        **John G. Koeltl**
                                **United States District Judge**