UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
:
PHOENIX BULK CARRIERS (BVI), LTD.,                           :
:
                                   Plaintiff,                :
:
            - against -                                      :
:
TRIORIENT, LLC                                               :
:
                                   Defendants.               :
:
-------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 2/17/2021

20-CV-0936 (JGK) (RWL)

**DECISION AND ORDER
ON MOTIONS TO QUASH
AND TO COMPEL**

**ROBERT W. LEHRBURGER, United States Magistrate Judge.**

This action began when Plaintiff Phoenix Bulk Carriers (BVI), Ltd. ("Phoenix") filed for confirmation of, and entry of judgment on, an arbitration award obtained against Defendant Triorient, LLC ("Triorient"). To collect on the judgment, Phoenix issued subpoenas to several non-party individuals and entities (the "Subpoenas"). The non-parties (collectively referred to as the "Non-Parties") include Triorient's sole members Albert Winslow and Juan Facundo Santucci (sometimes referred to as the "Triorient Members"); and Triorient Coal, LLC and Darien Land Management ("DLM"), both companies related to Triorient and similarly owned and controlled by Santucci and Wilson (the "Triorient Related Companies"). Phoenix also issued subpoenas to Triorient's Financial Director, Ines Jamie ("Jamie"); financial entities Citibank, N.A. ("Citibank"), American Express ("Amex"), and Charles Schwab & Co., Inc. ("Schwab") (collectively, the "Financial Entities"); as well as Brooklawn Country Club, of which Winslow is a member, and Manursing Island Club, of which Santucci is a member (collectively, the "Country Clubs").

None of the Financial Entities or Country Clubs have moved to quash the Subpoenas issued to them.  Nonetheless, the Non-Parties – Winslow, Santucci, and the Triorient Related Companies – have moved to quash those Subpoenas.  Phoenix has cross-moved to compel compliance with the Subpoenas served on individuals Winslow, Santucci, and Jamie.  For the reasons set forth below, subject to certain limitations, Triorient's motions to quash are DENIED, and Phoenix's cross-motion to compel is GRANTED.

### Background

**A.    The Judgment**

Phoenix and Triorient entered into a charter contract for transportation of cargo. In 2017, Phoenix filed arbitration against Triorient for breach of the contract (the "Arbitration").  The arbitration panel issued an award in Phoenix's favor on September 27, 2019.  Phoenix then filed a petition to confirm the arbitration award on February 4, 2020 (Dkt. 1), and on June 28, 2020, the Court granted Phoenix's petition and entered judgment in favor of Phoenix and against Triorient in the amount of $538,442.03 (the "Judgment"). (Dkt. 14.)  Triorient has not paid any of the Judgment owed to Phoenix.  The Triorient Related Companies were not parties to the Arbitration or Judgment, but Santucci and Wilson are the only members of both those entities as well as Triorient.

**B.    The Subpoenas**

The Subpoenas seek financial information pertaining to Triorient as well as financial information pertaining to the Non-Parties.  With respect to Triorient directly, the Subpoenas seek, for instance, account statements, correspondence, and other documents concerning accounts that are or were in Triorient's name; Triorient loan

documents; and collection instruments served on Triorient (i.e., notices of liens, garnishments, or attachments of property directed to Triorient assets or property). The Non-Parties do not object to the Subpoenas insofar as they seek that information.

Rather, they object to the Subpoenas insofar as they seek information about or from the Non-Parties. Information of that type sought from the Financial Entities includes, for example, correspondence with the Triorient Members and bank records for any accounts maintained by the Triorient Members or the Triorient Related Companies. From the Country Clubs, Phoenix has asked for the Triorient Members' account statements and correspondence.

From Santucci, Winslow, and Jamie, documents sought by Phoenix include bank records, insurance policies paid for by Triorient, records of transfers of funds between Triorient, the Triorient Related Companies, Santucci, and Winslow; records of transfers in and out of Schwab and Citibank; Amex charges; and the like. From the Triorient Related Companies, Phoenix has requested documents concerning matters such as a lease between Triorient and DLM (the two companies share the same address); transfers of funds between Triorient, the Triorient Related Companies, and the Members; tax returns; capital records; and audited financial statements.

## C.  Information on Which the Subpoenas are Based

The documents sought by Phoenix are grounded in certain limited information of which Phoenix already is aware. For instance, Phoenix has identified specific transfers of funds between a Triorient account at Citibank and other Triorient or Triorient-related

accounts at Citibank.  (Gutowski Aff. Ex. 6-7.[1])  Similarly, Phoenix has presented evidence of a relatively recent transfer of funds from Triorient to Schwab.  (Gutowski Aff. Ex. 20.)  There is also evidence of a $2.15 million debt owed by Trident Coal to Triorient; $260,000 in payments from Triorient to DLM; a $68,000 loan from DLM to Triorient; and Triorient's receipt of a Paycheck Protection Program loan, followed by immediate transfers to DLM and then transfers back to Triorient.  (Gutowski Aff. Ex. 9-10.)

In addition to evidence of multiple transfers back and forth between Triorient and the Triorient Related Companies Phoenix has identified records of transactions in which Triorient paid hundreds of thousands of dollars for Amex credit card charges, life insurance premiums, country club expenses, cash (through ATM withdrawals and otherwise), and even a Costco membership directly connected to Santucci and Wilson. (Gutowski Aff. Ex. 13-16.)  While many or all of these could be legitimate company expenses, it is plausible that some or many of them could have been a means for Santucci and Wilson to siphon funds from Triorient.

### Legal Standards for Post-Judgment Discovery From Non-Parties

Post-judgment discovery is governed by Rule 69 of the Federal Rules of Civil Procedure.  *D'Avenza S.p.A. v. Garrick & Co.*, No. 96-CV-166, 1998 WL 13844, at *2 (S.D.N.Y. Jan. 15, 1998).  Under that rule, a judgment creditor, such as Phoenix, may obtain discovery in aid of enforcement of the judgment "from any person – including the judgment debtor – as provided in these rules or by the procedure of the state where the court is located."  Fed. R. Civ. P. 69(a)(2).  As the rule expressly recognizes, discovery in

---

[1] "Gutowski Aff." refers to the Affirmation of Peter J. Gutowski dated December 11, 2020 (Dkt. 34).

aid of enforcement may be sought against "any person," including non-parties.  The comparable New York rule similarly provides that a "judgment creditor may compel disclosure of all matter relevant to the satisfaction of the judgment, by serving upon any person a subpoena."  N.Y. C.P.L.R. 5223.

Precisely because discovery to enforce a judgment is employed to discover assets of a recalcitrant judgment debtor, judgment creditors "must be given the freedom to make a broad inquiry to discover hidden or concealed assets of the judgment debtor."  *GMA Accessories, Inc. v. Electric. Wonderland*, *Inc.*, No. 07-CV-3219, 2012 WL 1933558, at *4 (S.D.N.Y. May 22, 2012) (internal quotation marks omitted); *accord EM Ltd. v. Republic of Argentina*, 695 F.3d 201, 207 (2d Cir. 2012) ("broad post-judgment discovery in aid of execution is the norm in federal and New York state courts"); *Pegaso Development Inc. v. Moriah Education Management LP*, No. 19-CV-7787, 2020 WL 6323639, at *4 (S.D.N.Y. Oct. 28, 2020) (quoting *EM Ltd.* and recognizing that judgment creditors are allowed "broad post-judgment discovery," including from non-parties, such as banks, that possess information pertaining to the judgment debtor's assets (internal alteration omitted)).

Discovery to enforce judgments often focuses on transfers of assets, such as when a judgment debtor transfers funds to another entity in an effort to deplete assets and evade payment.  Judgment creditors thus are permitted discovery of non-party assets "where the relationship between the judgment debtor and the non-party is sufficient to raise a reasonable doubt as to the bona fides of the transfer of assets between them."  *GMA Accessories*, 2012 WL 1933558 at *5 (internal quotation marks omitted); *see also D'Avenza*, 1998 WL 13844 at *3 ("Plaintiff is entitled to examine third parties to determine

if a judgment debtor has concealed or transferred assets applicable to satisfying its judgment").[2]

Although discovery in aid of enforcement is "broad," the rules do not provide judgment creditors with unfettered license to go on a "fishing expedition," subpoenaing non-parties just to see what might turn up.  *See D'Avenza*, 1998 WL 13844 at *3.  Instead, "post-judgment discovery must be 'calculated to assist in collecting on a judgment.'"  *Allstate Insurance Co. v. Mirvis*, No. 08-CV-4405, 2017 WL 10398552, at *1 (E.D.N.Y. Jan. 25, 2017) (quoting *EM Ltd.*, 695 F.3d at 207).  Accordingly, post-judgment discovery of non-parties is "limited to a search for the judgment debtor's hidden assets."  *GMA Accessories*, 2012 WL 1933558 at *4 (internal quotation marks and brackets omitted).

The burden to demonstrate the relevance of the requested material lies with the party issuing the subpoena; the burden to show that the request is impermissible lies with the non-party opposing the subpoena.  *Id.* at *5 (citing *Kingsway Financial Services v. Pricewaterhouse-Coopers, LLP*, No. 03-CV-5560, 2008 WL 4452134, at *4 (S.D.N.Y. Oct. 2, 2008).  Ultimately, "whether to limit Rule 69 post-judgment discovery remains within the discretion of the district court pursuant to its powers under Federal Rule of Civil

---

[2] Triorient cites to *Uniden Corporation of America v. Duce Trading Co., Ltd.*, No. 89-CV-878, 1993 WL 286102 (W.D.N.Y. July 19, 1993) for the proposition that asset discovery against a non-party requires "a somewhat heightened showing of necessity and relevance – *i.e.*, at least some demonstration of concealed or fraudulent transfers or alterego relationship with the judgment debtor."  *Id.* at *1.  In *Uniden*, the judgment creditor moved to compel deposition testimony from the judgment-debtor's principal concerning a company established by his wife shortly after the judgment-debtor became defunct.  The court disposed of the matter without getting to the merits of the issue.  Instead, the court denied the motion without prejudice because the judgment creditor failed to comply with local district court rules in filing the motion.  *Id.*  In any event, the Court does not deem *Uniden*'s articulation of the standard to be materially different from the principles set forth above, and arrives at the same conclusion regardless of which formulation is applied.

Procedure 26(b)(2)." *Allstate Insurance*, 2017 WL 10398552 at *1 (citing *EM Ltd.*, 695 F.3d at 207).

### Triorient's Motions to Quash[3]

Phoenix has provided evidence of transfers of funds between Triorient, the Triorient Related Companies, and Wilson and Santucci, who are the only Members of each entity.  Phoenix also has presented evidence raising questions about the propriety of those transfers, including payments made to and by the Triorient Related Companies, Wilson and Santucci.  The Court agrees that "the relationship between [Triorient] and the [Non-Parties] is sufficient to raise a reasonable doubt as to the bona fides of the transfer of assets between them."  *GMA Accessories*, 2012 WL 1933558 at *5 (internal quotation marks omitted).  The discovery Phoenix seeks from and about the Non-Parties generally is "calculated to assist in collecting on" the judgment against Triorient., *EM Ltd.*, 695 F.3d at 207, and comfortably falls within the "broad post-judgment discovery" permitted under Fed. R. Civ. P. 69.  *Id.*

The Non-Parties contend that the only material Phoenix needs is material that can and should be requested from Triorient, and that the Non-Parties should only be subject to discovery in the event that Phoenix does not obtain what it needs from Triorient.  That is disingenuous.  Following issuance of the arbitration award, Phoenix, through Winslow, indicated that Triorient intended to pay off amounts due to Phoenix

---

[3] In their moving papers, the Non-Parties argue that they have standing to move to quash the Subpoenas and that they timely filed their motions.  Phoenix does not contest either point, and the Court deems those issues undisputed.  Accordingly, the Court will not address them further.  The Non-Parties do suggest that the motions are improper as being supported by sworn statements from only the Non-Parties' lawyers, not the Non-Parties themselves.  That argument has no merit as the lawyers, of course, represent the Non-Parties; no declaration or affidavit is required of the clients as opposed to their lawyers.

but needed more time, and would provide whatever financial documents Phoenix requested. (Second Gutowski Aff. ¶¶ 5-6.[4])  But Triorient never paid anything, provided only limited information, and "stonewalled all of Phoenix's requests for specific documentation and information on their business activity, receivables, contracts, etc." (Second Gutowski Aff. ¶¶ 7-8.)  Meanwhile, as more time has passed, multiple creditors have filed lawsuits and, in some instances, obtained judgments against Triorient.[5] Constraining Phoenix to start with discovery only from Triorient could further jeopardize its ability to collect on its judgment.  Phoenix is entitled now to pursue post-judgment discovery with latitude to follow the proverbial money trail.

No more persuasive is the Non-Parties' argument that Phoenix already has sufficient documentation as reflected in the evidence it presents to support the requests currently at issue.   Just because Phoenix has some information about some transactions reflecting some transfers or depletion of some funds does not mean they are not entitled to seek more fulsome discovery to gain a fuller picture.

The Non-Parties also raise concern about the personal and confidential nature of some of the information sought.  That concern, however, is readily addressed by use of a protective order limiting the use and disclosure of materials produced by both the

---

[4] "Second Gutowski Aff." refers to the Second Affirmation of  Peter J. Gutowski dated Dec. 28, 2020 (Dkt. 39).

[5] *See, e.g., Wells Fargo Bank, N.A. v. Triorient, LLC*, No. FST-CV20-6049259-S (Conn. Super. Ct. commenced Nov. 16, 2020) (alleging Triorient breached $20 million credit facility); *M2M Panamax Pool Ltd. v. Triorient LLC*, No. FST-CV20-6049258-S (Conn. Super. Ct. commenced Nov. 16, 2020) (seeking confirmation of a $66,677.29 arbitration award); *CLDN Cobelfret Pte Ltd. v. Triorient LLC*, No. 20-CV-9926 (S.D.N.Y. commenced Nov. 25, 2020) (seeking confirmation of two partial final arbitration awards); *Cargill Inc., Ocean Transportation v. Triorient LLC*, No. 20-CV-10058 (S.D.N.Y. commenced Dec. 1, 2020) (seeking confirmation of $1,482,717.47 final arbitration award).

parties and non-parties.

The Court now turns to briefly addressing the scope of the Subpoenas issued to the Financial Entities and Country Clubs.  All requests are appropriately limited in time to January 1, 2018 (after commencement of the Arbitration) to the time of production.

**Citibank:** The Citibank Subpoena requests at issue essentially ask for all account information and correspondence for accounts maintained by Winslow, Santucci, DLM, and Triorient Coal, and a specific account, designated as the '399 account, for which a transfer was made to Triorient's account from DLM.  Given the evidence obtained so far reflecting transfers among Triorient, the Triorient Related Companies, Santucci, and Winslow, these requests, with one exception described below, are appropriate.

The Non-Parties argue that transfers of funds into Triorient's account do not justify discovery of the other accounts, because money flowing in is favorable to Phoenix and augments, rather than depletes, the judgment debtor's assets.  The Court agrees with Phoenix, however, that transfers in can be, and most often are, also accompanied by transfers out.  Indeed, Phoenix has presented financial records indicating outflow of funds.  Although Phoenix has not presented evidence of transfers in, out, and between every combination of those individuals and entities, enough has been presented to make the requests reasonably calculated to lead to discovery of Triorient's assets.

To be sure, there may be transactions to and from the various accounts that are proper or even have nothing to do with Triorient.  But production of documents that contain both information that is relevant and responsive as well as information that is not relevant or responsive is commonplace.  Were it otherwise, the fact that a document

includes both relevant and irrelevant information would preclude production of the document at all.  That is not the law.

While most of the Citibank requests are appropriate, the Court finds request number 6 to be overly intrusive and unjustified.  That request seeks all correspondence between Citibank on the one hand and Winslow, Santucci, or Triorient on the other. Correspondence between the bank and its individual customers may include a variety of subject matter, and not all correspondence necessarily sheds light on where assets came or went.  Accordingly, the request from Citibank of correspondence with Winslow or Santucci need not be produced, unless such correspondence is in their capacity as an agent of Triorient.  The Citibank Subpoena may be enforced subject to that limitation.

**Amex:** The Subpoena directed to Amex makes three requests, one each for the account statements and associated documents for the Amex accounts of Triorient, Santucci, and Winslow. The documents sought are those "showing the source and manner of each payment received," thus focusing on transfers into the Amex accounts. Those requests are reasonably calculated to locate Triorient assets.  The Amex Subpoena may be enforced.

**Schwab:** Like the Amex Subpoena, the Schwab Subpoena requests account statements and related documents for Triorient, the Triorient Related Companies, and the two Triorient Members.  The Schwab requests similarly are tailored to obtaining documents "showing the source and manner of each payment received" and are reasonably calculated to locate Triorient assets. The Schwab Subpoena may be enforced.

**Country Clubs:** As explained above, Phoenix issued subpoenas to the Country Clubs to follow up on evidence of Triorient payments to the Country Clubs on behalf of Winslow and Santucci.  The Country Club Subpoenas seek all club statements and other documents for Winslow, Santucci, and Triorient "showing the course and manner of each payment received."  As with the other Subpoenas, this request is appropriate, but only as to payments received by the Country Clubs.  The second request asks for all correspondence between the Country Clubs and Winslow, Santucci, and Triorient. That request is overbroad as such correspondence could well include matters having nothing to do with financial transactions or source of funds.  Accordingly, the second of the Country Club requests shall be limited to correspondence concerning payments made by, for, or on behalf of Winslow, Santucci, and Triorient to the Country Clubs.  The Country Club Subpoenas may be enforced subject to that limitation.

The documents requested of Santucci, Wilson, and Jamie will be discussed next, in the context of Phoenix's motion to compel their compliance with the Subpoenas served on those individuals.

### Phoenix's Motion to Compel

The Subpoenas directed to Santucci, Wilson, and Jamie, which the Court refers to here collectively as the "Individual Subpoenas," are directed to each individual in respect to their relationship to Triorient and the Triorient Related Companies.[6]  The Subpoena to Winslow thus is addressed to him as "Albert Winslow (Owner of Triorient LLC, Triorient

---

[6] For purposes of the Individual Subpoenas, the Triorient Related Companies include not only Triorient Coal and DLM, but also Triorient Trading LLC, another company for which Santucci and Winslow appear to be the sole members or owners.  (*See* Gutowski Aff. Ex. 5.)

Coal LLC, Triorient Trading LLC and Darien Land Management LLC)."  The Subpoena to Santucci bears the same designation.  The Subpoena to Jamie is directed to "Ines Jamie (Financial Director of Triorient LLC)."  The three Individual Subpoenas each contain the same seventeen requests.

The issues raised with respect to the Individual Subpoenas are largely the same as those raised with respect to the Subpoenas discussed in the previous section – the extent to which Phoenix may obtain post-judgment discovery from the Triorient Related Companies, Wilson, and Santucci.  The Court already has determined that financial discovery of Triorient assets flowing to or from the individual Members and the Triorient Related Companies is proper.

The Individual Non-Parties raise three particular objections with respect to the Subpoenas directed to them.  First, Triorient asserts that the three subpoenas are "keeper of record subpoenas seeking the production of documents in Triorient's custody, possession, and control" and that Triorient cannot broaden the scope of the subpoenas issued to Santucci and Winslow by directing the subpoenas to them in their capacity as owners and managing directors of Triorient and also the Triorient Related Companies. Accordingly, Triorient argues, the subpoenas should be limited solely to documents in Triorient's possession, custody, and control, which do not include documents held by or on behalf of the Triorient Related Companies.

That argument is just another way of saying that discovery should not be permitted about or from anyone other than Triorient.  Triorient does not cite any authority to support its argument, and the objection does not stand up to scrutiny.  The Individual Subpoenas seek documents in the three individuals' possession, custody, and control in their

personal capacity, which, for Santucci and Winslow, includes their being sole members or owners of Triorient and the Triorient Related Companies.  As long as the documents are in Santucci and Winslow's possession, custody, or control, they are proper fodder for production even if the documents concern the Triorient Related Companies or Santucci and Winslow.

The second objection advanced by the Individual Non-Parties is that the Individual Subpoenas include requests for personal financial information of Santucci and Winslow. As Triorient explains, its objection is premised on the same grounds on which it moved to quash the Subpoenas to non-parties such as the Financial Entities and Country Clubs. Accordingly, the objection is overruled to the same extent it is overruled in connection with the Subpoenas at issue on the motions to quash.

Lastly, Triorient contends that the motion to compel should be denied because Phoenix failed to accept Triorient's offer to meet and confer regarding Triorient's objections.  Like its contention that Phoenix should conduct its discovery in stages, this protest is hardly meaningful.  Triorient objected to the requests in their entirety, and, although offering to meet and confer, did not identify any documents that it would produce. The Federal Rules of Civil Procedure do not permit such blunderbuss objections, and instead require parties to state whether any responsive materials are being withheld on the basis of the objection and to produce the rest.  Fed. R. Civ. P. 34(b)(2)(C).  Moreover, Triorient suggested that Phoenix withdraw the subpoenas and serve requests only to Triorient.  That, of course, is precisely what the parties dispute – the extent to which Phoenix should be able to obtain production of documents from, and concerning, entities

other than Triorient.  While parties certainly must engage in good faith meet and confer, Triorient had already drawn a line in the sand with its communications to Phoenix.

The Court has reviewed the seventeen requests set forth in the Individual Subpoenas and deems them to be appropriate,[7] subject to the following limitations.

Requests 7 and 8 (documents reflecting transfer of funds to, respectively, Winslow and Santucci): These requests are limited to transfers from Triorient or the Triorient Related Companies.

Request 14 (records of all meetings of the owners of Triorient and the Triorient Related Companies): This request is limited to official meeting minutes from January 1, 2018 forward.

Request 16 (all records reflecting capital from inception): This request is limited to documents sufficient to show capital from January 1, 2018 forward.

## Conclusion

Accordingly, for the foregoing reasons, and subject to the limitations set forth above, Triorient's motions to quash are DENIED, and Phoenix's cross-motion to compel is GRANTED.  The Clerk of Court is respectfully requested to terminate the motions at Dkts. 22-39.

---

[7] Request 13 requests tax returns of Triorient and the Triorient Related Companies. Although tax returns often are shielded from discovery, their production is appropriate here as they may shed light on the extent to which various payments and transfers were paid out as income, treated as business expenses, or simply used as a means of depleting assets.

SO ORDERED,

_____

ROBERT W. LEHRBURGER
UNITED STATES MAGISTRATE JUDGE

Dated: February 17, 2021
       New York, New York